United States v. Jacques Durand

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 21st day of June, two thousand twenty one.

Present:        ROSEMARY S. POOLER,
                STEVEN J. MENASHI,
                        *Circuit Judges*.
                MARY KAY VYSKOCIL,
                        *District Judge*.[1]

_____

UNITED STATES OF AMERICA,

                        *Appellee*,

                v.                                          20-1992-cr

JACQUES DURAND,

                        *Defendant-Appellant*.

_____

Appearing for Appellant:        Allegra Glashausser, Federal Defenders of New York, Inc., New York, N.Y.

Appearing for Appellee:         Andrew D. Grubin, Assistant United States Attorney (Kevin Trowel, J. Matthew Haggans, Assistant United States Attorneys, *on the brief*), *for* Mark J. Lesko, Acting United States Attorney for the Eastern District of New York, Brooklyn, N.Y.

---

[1] Judge Mary Kay Vyskocil, United States District Court for the Southern District of New York, sitting by designation.

Appeal from the United States District Court for the Eastern District of New York (Glasser, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of said District Court be and it hereby is **AFFIRMED**.

Jacques Durand appeals from the June 16, 2020 order of the United States District Court for the Eastern District of New York (Glasser, *J.*) denying his motion to suppress a cellphone number he provided to police. In June 2016, Durand was convicted of thirteen counts of access device fraud and one count of identity theft. After his conviction, Durand appealed from the district court's denial of his motion to suppress. We held that the district court erred in failing to hold an evidentiary hearing to determine whether certain questions to Durand were permissible under the pedigree exception to *Miranda v. Arizona*, 384 U.S. 436 (1966). *United States v. Durand*, 767 F. App'x 83, 88 (2d Cir. 2019) ("*Durand I*"). The district court held an evidentiary hearing on June 21, 2019 and concluded that the questioning fell within the pedigree exception, and even if the questioning had violated *Miranda*, the cellphone number would have inevitably been discovered. *United States v. Durand*, 467 F. Supp. 3d 66, 71, 74 (E.D.N.Y. 2020) ("*Durand II*"). We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

In reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error, and its application of law to fact de novo. *United States v. Pabon*, 871 F.3d 164, 173 (2d Cir. 2017). We first address whether the questions put to Durand after he requested counsel during his interrogation fall within the "safeguards [that] come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980). "The collection of biographical or pedigree information through a law enforcement officer's questions during the non-investigative booking process that typically follows a suspect's arrest, however, does not ordinarily implicate the prophylactic protections of *Miranda*, which are designed to protect a suspect only during investigative custodial interrogation." *Rosa v. McCray*, 396 F.3d 210, 221 (2d Cir. 2005). In *Pennsylvania v. Muniz*, the Supreme Court held that "a routine booking question exception . . . exempts from *Miranda*'s coverage questions to secure the biographical data necessary to complete booking or pretrial services." 496 U.S. 582, 601-02 (1990) (internal quotation marks omitted).

In examining whether the number should have been suppressed, we look to three questions: (1) whether Durand was questioned as part of the booking process; (2) whether the questions were reasonably related to the officer's administrative concerns; and (3) whether the officers should have known their questions were likely to produce incriminating information. *See Rosa,* 396 F.3d at 221. If the answers to any of these three questions is no, the phone number is not subject to the pedigree exception. While the district court found the answer to all three was yes, we conclude that the officers should have reasonably expected their questions regarding Durand's cellphone number would produce incriminating information.

"Without obtaining a waiver of the suspect's *Miranda* rights, the police may not ask questions, even during booking, that are designed to elicit incriminatory admissions." *Muniz*, 496

2

U.S. at 602 n.14. *Rosa* sets forth an objective inquiry "[t]o determine whether the police abused the gathering of pedigree information in a manner that compels *Miranda* protection . . . Should the police have known that asking the pedigree questions would elicit incriminating information?" 396 F.3d at 222. The district court erred in determining that the inspectors lacked reason to know that the answer to their question was likely to incriminate Durand. While a request for phone number will often be acceptable in the booking context, the booking exception does not create categorical exemptions from *Miranda* for particular questions. Instead, "courts should carefully scrutinize the factual setting of each encounter of this type" as "[e]ven a relatively innocuous series of questions may . . . be reasonably likely to elicit an incriminating response." *United States v. Avery*, 717 F.2d 1020, 1025 (6th Cir. 1983). In this case, the officers had already developed a short list of phone numbers likely connected to the case. The lead postal inspector testified that if he had not turned Durand's cellphone over to local police, "[he] would have kept the phone . . . because [he] would have looked to get either a search warrant or gather some information relative to the phone." App'x at 70. The inspectors also did not simply request a number but tested Durand's answers, challenged him on his failure to initially provide a correct number, and specifically asked for the number of the cellphone in his possession. Finally, any administrative need for the cellphone number in the context of a booking was minimized by the plan to hold Durand's phone and not return it to him. In the factual setting of this encounter, we conclude that the inspectors should have understood their follow-up questions regarding Durand's cellphone number were likely to incriminate him. The questioning violated *Miranda*.

However, the district court also held that the inspectors would have inevitably discovered the cellphone number even without Durand's answer during the booking interview. We agree. To demonstrate inevitable discovery, the government must prove, by a preponderance of the evidence, that "each of the contingencies necessary to the legal discovery of the contested evidence would be resolved in the government's favor." *United States v. Heath*, 455 F.3d 52, 60 (2d Cir. 2006). Our analysis of inevitable discovery proceeds in two steps. "First, the court must evaluate the progress of the investigation at the time of the government misconduct to determine whether an active and ongoing investigation . . . was in progress." *In re 650 Fifth Ave. & Related Properties*, 830 F.3d 66, 103 (2d Cir. 2016) (internal quotation marks omitted). "At this step, the government must establish that the investigation was not triggered or catalyzed by the information unlawfully gained by the illegal search but, rather, that the alternate means of obtaining the challenged evidence was, at least to some degree, imminent, if yet unrealized." *Id.* (internal quotation marks and alterations omitted). "Second, the court must, for each particular piece of evidence, specifically analyze and explain how, if at all, discovery of that piece of evidence would have been more likely than not inevitable absent the unlawful search." *Id.* (internal quotation marks and alterations omitted). Here, prior to receiving the number during questioning, the inspectors had already focused their investigation on Durand, found evidence linking him to the crimes, and had an interest in his phone.

Prior to the booking interview, the inspectors had developed probable cause to arrest Durand and obtain subscriber information for his cellphone. At the time of his arrest, the evidence established that a postal carrier had observed the driver of a Nissan Maxima, who appeared to be Durand, was following a postal carrier. The Nissan Maxima was registered to an individual connected to Durand. Complainants had identified an individual stealing from their mailboxes who matched Durand's description. Surveillance videos from ATMs associated with

fraudulent transactions also matched these descriptions. As discussed above, the inspectors had already developed a short list of numbers connected to the crime and testified to their interest in learning more about Durand's phone. Durand's statement regarding his cellphone number was not the catalyst for the investigation; indeed, the warrant application for Durand's cellphone contains no evidence developed after his interview. Given the evidence tying to Durand to the crime, the inspectors' interest in his phone, and the limited numbers at issue, we find that it was more likely than not inevitable that the government would have at the least sought and been able to obtain subscriber information for the phone seized during the arrest. Accordingly, we find that the district court did not err in denying Durand's motion to suppress.

We have considered the remainder of Durand's arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

4